# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 18-975V
UNPUBLISHED

| | |
|---|---|
| PAULA D. TYSON,<br><br>                        Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                        Respondent. | **Chief Special Master Corcoran**<br><br>**Filed**: October 25, 2019<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Onset; Influenza<br>(Flu) Vaccine; Shoulder Injury<br>Related to Vaccine Administration<br>(SIRVA) |

**Amy A. Senerth,** Muller Brazil, LLP, Dresher, PA, for Petitioner.

**Glenn Alexander MacLeod**, U.S. Department of Justice, Washington, DC, for Respondent.

## FINDINGS OF FACT[1]

On July 9, 2018, Paula D. Tyson filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleges she suffered a "Shoulder Injury Related to Vaccine Administration (SIRVA), which was caused by the influenza ("flu") vaccination she received in her right shoulder on February 8, 2017. Petition at ¶¶ 2 & 18. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] This ruling will be posted on the United States Court of Federal Claims' website. **This means the ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access. Because this unpublished ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find the onset of Petitioner's SIRVA occurred within 48 hours of vaccination. Specifically, Petitioner suffered symptoms manifested by pain immediately upon vaccination.

## I.    Relevant Procedural History

In support of her claim, Petitioner filed medical records (Exs. 1-5, 7), and her own affidavits (Ex. 6 & 8). Deadlines for Respondent to report his position in the case were set following the August 28, 2018 initial status conference. Order, ECF No. 10; *see also* Orders, dated Oct., 9, 2018, Dec. 11, 2018, Feb 7, 2019, and Apr. 9, 2019.

On May 9, 2019, Respondent filed a status report indicating his intention to defend the case and requesting a Rule 4(c) Report deadline.  ECF No. 18. Respondent filed a Rule 4(c) Report on July 19, 2019. ECF No. 19. In his report, Respondent argued that Petitioner had not met her burden of establishing that the onset of her alleged shoulder injury occurred within 48 hours of her February 8, 2017 flu vaccination. *Id.* at 5-6.

In a Scheduling Order filed August 23, 2019, then-Chief Special Master Nora Beth Dorsey reported that she had reviewed the record and determined that fact hearing or briefing would not be necessary. ECF No. 20. A deadline was set for closing the record on the matter of onset. *Id*. Pursuant to the scheduling order, Petitioner submitted affidavits from three fact witnesses.[3] ECF Nos. 21 & 23 (Exs. 9-11).

The matter is now ripe for adjudication.

## II.    Issue

At issue is whether Petitioner's first symptom or manifestation of onset after vaccine administration was within 48 hours as set forth in the Vaccine Injury Table. 42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination). Additionally, the Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA requires that a petitioner's pain occur within this same time frame, 48 hours. 42 C.F.R. § 100.3(c)(10).

## III.    Authority

Pursuant to Vaccine Act § 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act § 11(c)(1). A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even

---

[3] Petitioner filed two untimely affidavits absent a motion for leave to file out of time.  *See* Order, ECF No. 20 (setting Sept. 26, 2019 filing deadline); Pet's Notice of Filing, ECF No. 23, dated Oct. 2, 2019 (Exs. 10-11).  Nevertheless, in the interest of judicial efficiency, I shall consider the untimely affidavits herein.

though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record.  Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Curcuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

### IV.    Finding of Fact

I make the findings in this ruling after a complete review of the record, including all medical records, affidavits, and Respondent's Rule 4(c) Report.  Specifically, I base the finding on the following evidence:

- On February 8, 2017, Petitioner received a flu vaccine in her right shoulder at her Primary Care Provider ("PCP"). Ex. 7.

- On April 3, 2017, Petitioner returned to her PCP for a follow-up for several of her ongoing health conditions including insomnia, hypertension, osteoarthritis, and depression. Ex. 2 at 8. Petitioner denied any new complaints and requested a refill of her prescriptions. *Id.* Petitioner was examined by physician assistant ("PA") Amanda McCook who noted "painful joints that is recurrent" under Petitioner's musculoskeletal exam. *Id.*

- On June 8, 2017, Petitioner returned to her PCP and was seen again by PA McCook. Ex. 2 at 5. Petitioner now reported pain in right upper extremity since her February flu vaccination. *Id.* Petitioner reported her range of motion was decreased due to pain and that she had been trying to control the pain with over-the-counter arthritis cream and ibuprofen. *Id.* PA McCook administered a steroid injection in Petitioner's right shoulder and referred for an x-ray and MRI. *Id.* at 6-7.

- On July 12, 2017, Petitioner returned to her PCP and reported increased right shoulder pain. Ex. 2 at 2.  During this appointment, Petitioner explained to PA McCook that she had not yet completed the recommended MRI due to inability to pay her insurance co-payment for the procedure. *Id.* PA McCook noted Petitioner

3

having a decreased range of motion in her right shoulder and refilled Petitioner's pain medication. *Id.* at 3-4.

- On August 25, 2017, Petitioner underwent an MRI of her right shoulder with Dr. Douglas Adolphson at Memorial Satilla Health.[4] Ex. 4 at 24. Dr. Adolphson's impression was "[s]urpraspinatus tendinopathy with possible partial-thickness articular sided tearing involving the anterior most supraspinatus tendon fibers. Normal rotator cuff muscle bulk." *Id.*

- On September 25, 2017, Petitioner was seen by orthopedic surgeon J. Lex Kenerly, III. Ex. 5 at 1-5. Petitioner reported right shoulder pain since receiving a flu vaccine in February.[5] *Id.* at 1. Petitioner underwent an x-ray of her right shoulder which Dr. Kenerly interpreted as normal. *Id.* at 4. Upon examination and review of Petitioner's MRI results, Dr. Kenerly proposed treatment options and Petitioner opted to proceed with right shoulder surgery. *Id.*

- On November 29, 2017, Petitioner was evaluated by physical therapist Misty Keller at Memorial Satilla Health for post-operative physical therapy ("PT"). Ex. 4 at 36. PA Keller noted "[patient] report in February for a flu shot from PCP. [Patient] states in April she began to have shoulder pain." *Id.*

- Petitioner avers that her right should pain began immediately following her February 8, 2017 flu vaccination. Exs. 6 & 8. Petitioner states that at the time of her April 2017 PCP appointment, she believed the pain would resolve with the use of over the counter medication, so she did not think it necessary to bring it up at an appointment which she characterized as otherwise being solely for medication refills. Ex. 8 at 2.

- Petitioner's husband, Clarence Tyson, Jr., recalls Petitioner's right shoulder pain starting on the day of her February 8, 2017 flu vaccination. Ex. 9.

- Petitioner's son, Clarence Tyson, and daughter-in-law, Marie Tyson, both recall Petitioner having right shoulder pain during a visit on February 10, 2017. Exs. 10-11.

The above medical entries are largely consistent with Petitioner's affidavit testimony that her right shoulder pain began at the time she received the flu vaccine on

---

[4] In the Shoulder MRI Patient History form associated with this visit, Petitioner indicated that she had an x-ray completed in April 2017. Ex. 4 at 20. Petitioner's shoulder x-ray was completed in June 2017, not April. Ex. 2 at 7.

[5] During her September 25, 2017 appointment with Dr. Kenerly, Petitioner reported that she had an injection in April which provided some relief. Ex. 5 at 1. However, Petitioner did not receive a steroid injection during her April 2017 PCP appointment but did so in June 2017, *see* Ex. 2 at 5, 8. Dr. Kenerly's records simultaneously refers to the duration of Petitioner's pain as six months, while indicating an onset date of February 8, 2017 (more than seven months before the September 27, 2017 appointment). *See id.* at 4.

February 8, 2017.  To the extent that the records presents some notable inconsistencies as to the history of Petitioner's course of care (*see* fn. 4 & 5, *supra*; *see also* Ex. 4 at 36), these discrepancies do not overcome Petitioner's otherwise consistent reporting to her PCP and orthopedic surgeon that her right shoulder pain began following her February 2017 flu vaccination.

Admittedly, Petitioner's November 29, 2017 PT record presents the closest contradiction to Petitioner's claimed onset. Ex. 4 at 36. In this record, PA Keller confusingly notes the date of Petitioner's flu vaccination while also indicating that Petitioner's shoulder pain began in April. *Id.* For several reasons, however, I find it appropriate to give this inconsistent record little weight. The record was made four and a half months into Petitioner's shoulder pain treatment, following referrals from her PCP and orthopedic surgeon who each recorded the onset of Petitioner's pain as February 8, 2017.  Furthermore, the PT record itself mentions Petitioner's flu vaccination as part of the history of Petitioner's shoulder pain. I find the orthopedist and PCP records (created more contemporaneously to the Petitioner's February 2017 flu vaccination) to be more persuasive.

Furthermore, while Petitioner did not initially report her right shoulder pain to her PCP on April 3, 2017, she appears to have reported ongoing joint pain. Ex. 2 at 8. As such, the record does not directly contradict Petitioner's assertion that she was experiencing shoulder pain at that time that she hoped would resolve with over-the-counter medication, but instead merely omits explicit reference to the onset of shoulder pain.  In addition, although the first medical record evidence corroborating Petitioner's onset assertions occurs four months after vaccination, I do not find under the circumstances that this lag weakens the conclusion that her claimed onset is "more likely than not." This finding is well supported by Petitioner's subsequent treatment records (generated prior to the claim's filing) which refer to the February 8, 2017 flu vaccination in relation to the onset of her pain. Likewise, I find that the sworn testimony of Petitioner's witnesses to be credible and in agreement with the Petitioner's assertions. As such, I find preponderant evidence that the onset of Petitioner's right shoulder injury occurred within 48 hours of her February 8, 2017 flu vaccination.

## V.     Scheduling Order

Given my findings of fact regarding the onset of Ms. Tyson's pain, Respondent should evaluate and provide his current position regarding the merits of Petitioner's case.

**Accordingly, Respondent shall file, by no later than Monday, December 9, 2019, an amended Rule 4 Report reflecting Respondent's position in light of the above fact finding.**

**IT IS SO ORDERED.**

s/Brian H. Corcoran
Brian H. Corcoran
Chief Special Master
